IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

5:23-cv-71

| | |
|---|---|
| WOODBURN CROSSING HOMEOWNERS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE HANOVER AMERICAN INSURANCE COMPANY; HANOVER AMERICAN INSURANCE COMPANY; THE HANOVER INSURANCE COMPANY; and THE HANOVER INSURANCE GROUP, INC., <br><br> Defendants. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

**NOW COMES** Plaintiff, by and through undersigned counsel, to complain of the Defendants by alleging and saying as follows:

## PARTIES

1. Plaintiff is a North Carolina homeowners' association. At all times relevant to this Complaint, Plaintiff owned and operated a complex of twenty-five (25) multi-family residential buildings and a pool house located in Mooresville, North Carolina (hereinafter, the "Property").

2. Defendants Hanover American Insurance Company and The Hanover American Insurance Company are, upon information and belief, a single corporation organized and existing under the laws of the State of New Hampshire; however, in some places, this corporation is registered as "Hanover American Insurance Company," while in others, it is registered as "The Hanover American Insurance Company." For example, it is registered only as "Hanover American

Insurance Company" with the National Association of Insurance Commissioners and with the North Carolina Insurance Commissioner in their consumer and service databases, while it lists itself as "The Hanover American Insurance Company" in its insurance policies and in certain incorporation documents. At all times relevant hereto, Defendants Hanover American Insurance Company and The Hanover American Insurance Company were transacting substantial business in the State of North Carolina.

3. Defendant The Hanover Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire. At all times relevant hereto, it was transacting substantial business in the State of North Carolina.

4. Defendant The Hanover Insurance Group, Inc. is a corporation organized and existing under the laws of the State of Delaware. At all times relevant hereto, Defendant The Hanover Insurance Group, Inc. was transacting substantial business in the State of North Carolina.

5. Defendants Hanover American Insurance Company, The Hanover American Insurance Company, The Hanover Insurance Company, and The Hanover Insurance Group, Inc. shall herein be collectively referred to as "Defendants."

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7. The Defendants are subject to personal jurisdiction in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

9. At the times relevant hereto, the Property was insured by Defendants under an insurance policy, assigned policy number ZZ6 D842051 (hereinafter the "Policy") (Exhibit A).

10. Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect from March 15, 2020 to March 15, 2021.

11. The Policy provided replacement cost coverage to Covered Property, including the Property, caused by or resulting from any Covered Causes of Loss, including wind and hail.

12. As reported by local media outlets, including television, newspaper and radio, on or about May 24, 2020, an unusually severe wind and hailstorm passed over the Property. The storm produced high-velocity winds, approximately one-inch hailstones, and wind-driven debris.

13. During the May 24, 2020 storm, the wind and hail caused damage to the shingle roofing system on every building in the complex. The roofs sustained severe damage with missing or loose shingles on roofs apparent from the ground. Wind damage manifested as creased or missing shingles, along with lifted or loose shingles. Hail damage manifested as hail strike divots with severity to produce loss of granulation, divots in the shingle cap with breaks in the shingle backing in some cases, and bruised shingles. Further, there was substantial hail and wind damage to the gutters, downspouts, metal components, exterior siding, and other exterior building components. All damages were widely prevalent and dispersed over the entire Property, on all roof slopes and all buildings. As determined by a number of professionals and tradesmen, the scope of necessary repairs at the Property as a result of the May 24, 2020 storm, includes but is not necessarily limited to:

    a. Replacement of all shingle roofing systems;

    b. Replacement of decking under all shingle roofing systems;

    c. Replacement of flashing, vents, and metal apertures;

    d. Replacement of gutters and downspouts;

    e. Replacement of exterior siding and other exterior building components; and

    f. A detach and reset of digital satellite systems.

14. Following the May 24, 2020 storm, Plaintiff submitted an insurance claim to the Defendants (Claim No. 85-00118813; hereinafter "the Claim") for hail and wind damage to the Property as a result of the May 24, 2020 storm or otherwise within the Policy period. Consistent with the advice and opinions of contractors and consultants, Plaintiff maintained that all slopes of all roofs at the Property required total replacement, including decking, as a result of the wind and hail damage.

15. In connection with the Claim, Plaintiff retained Premier Public Adjusting, LLC ("Premier") on March 10, 2022, to assist with the investigation and valuation of the Claim.

16. On or about May 3, 2022, Premier, along with Defendant's hired representative Sean Brickner PE of Envista Forensics, conducted an initial inspection of the Property. Mr. Brickner's report is attached hereto as <u>Exhibit B</u>, and it confirms that a hailstorm did, in fact, damage the roofs at the Property and, in most cases, necessitated total replacement of each building's roof. Specifically, Mr. Brickner recognized that buildings with CertainTeed XT 20 shingles must have the roofs replaced because said shingles were discontinued and incompatible with other existing products in performing repairs of individual shingles.

17. However, Mr. Brickner erroneously concluded in his report that a few buildings had CertainTeed XT 25 AR shingles which he believed were compatible with other existing products and might enable spot repairs. However, as maintained by the Plaintiff and its representatives, the pliability of the existing shingles on all roofs made replacing individual

shingles impossible on any buildings because other shingles (surrounding the individual shingle being replaced) would rip and tear.

18. Shortly thereafter, on or about May 20, 2022, Plaintiff provided a Claim package to Defendants which set forth the net amount of the Claim at $2,248,194.05. A copy of the Claim package is attached hereto as <u>Exhibit C</u>. Along with this Claim package, a Sworn Statement in Partial Proof of Loss was submitted to Defendants, in addition to detailed line-item estimates. Further, this Claim package was accompanied by a letter wherein the Plaintiff, by and through Premier, expressed dissatisfaction that the Claim had not been paid to date and had not been promptly and reasonably investigated, including by and through the use of a third-party vendor, Sean Brickner of Envista Forensics, who at the prior site inspection had continually refused to acknowledge all of the wind and hail damages that were clearly pointed-out, documented, and photographed by Premier, and further, who had made an incorrect assumption of shingle type as to a few of the buildings and insisted that the shingles on those buildings could be spot repaired. A photo report showing the damages documented by Premier is included in the Claim package.

19. On June 16, 2022, the Defendants responded to the Claim package that was provided a month prior. In their letter, which is attached hereto as <u>Exhibit D</u>, Defendants "reject[ed] the Proof of Loss." Defendants failed to explain why all the damages asserted were not covered, other than saying they generically did not agree to pay the full amount asserted in the Claim package.

20. On June 20, 2022, Premier wrote back to the Defendants, and said letter is attached hereto as <u>Exhibit E</u>. Therein, Premier pointed out to Defendants that they had failed to comply with N.C. Gen. Stat. § 58-3-40 in their failure to provide proper claim forms (including proof of loss forms), had refused to provide a certified copy of the Policy upon request in violation of

certain administrative regulations, and that Defendants were likely in violation of N.C. Gen. Stat. § 58-63-15(11) in multiple respects, including but not limited to "fail[ing] to … provide a reasonable explanation of the basis in the insurance policy … for denial of a claim."

21. Defendants provided no formal response to the June 20, 2022 letter from Premier, other than having their adjuster, Mr. Michael Malley, engage in oral discussions with representatives of Premier and send several emails.

22. Plaintiff and Defendants coordinated a second joint inspection of the Property to occur from July 18–20, 2022. Defendants sought out DBI Construction Consultants for this second inspection. DBI Construction Consultants' findings contradicted Defendants' first inspection, as Envista Forensics had identified all but two buildings as being damaged, whereas DBI undercut these findings to claim that damages previously identified by Defendants did not exist. A copy of the DBI Report is attached hereto as Exhibit F.

23. In the report, DBI begins by acknowledging that it was hired by Defendants to estimate the cost of *repairs* to the Property. That is, despite already hiring an engineer who largely recommended replacement, Defendants sought out consultants to specifically find that repair, as opposed to replacement, on buildings with roofs that had already been identified by Defendants as needing replacement, was an appropriate course of action.

24. On August 10, 2022, Premier provided Defendants with an additional NTS Shingle Identification report which confirmed that the other shingles on the Property that Brickner had previously misidentified were CertainTeed CT 20 shingles, as opposed to the XT 25 AR shingles as they were identified in Envista's report. CT 20 shingles, like XT 20 shingles identified in Envista's report, are discontinued and disallowed from being and unable to be mixed with currently available products. As such, the NTS Report submitted by Plaintiff confirms that replacement was

the only viable option to return the Property to its pre-loss state. A copy of the second NTS Report is attached hereto as <u>Exhibit G</u>.

25. Mr. Malley responded that Defendants continued to disagree with the scope of damages, specifically as to the removal and replacement of the roof sheathing and requested additional documentation regarding the Property's maintenance/repair records and any insurance claims made in the past five years.

26. Premier immediately requested said information from Plaintiff, and provided Defendants with answers to its questions in an August 19, 2022 and September 14, 2022 email. In said emails, Premier took care to note that it had been one hundred and forty-one days since Defendant received the Sworn Proof of Loss, nearly sixty days since Defendants last inspection, thirty days since Plaintiff's last request for an update—none of which were ever formally addressed by Defendants.

27. At long last, on or about September 28, 2022, Mr. Malley made an offer of sufficient funds to replace only 11 of the 26 roof systems and refused to make an offer that would replace all of the damaged roofs, based upon the contradictory and debunked third-party reports that the Defendants had obtained from Mr. Brickner and DBI Construction Consultants.

28. This payment did little to address the other fifteen roofs that needed to be replaced. Defendants continued to keep their "investigation" ongoing as to those fifteen roofs, despite conflicting reports from Defendants' own experts, along with shingle reports by the Plaintiffs, pointing to the necessary conclusion that the roofs must be replaced.

29. Plaintiff waited months-on-end for Defendants to address the discrepancy created by its own experts' reports. Still, with 2023 quickly approaching, Plaintiff had received no formal response.

30. Therefore, on December 1, 2022, Premier sent a second letter to Defendants, and said letter is attached hereto as Exhibit H. Therein, Premier explained that Defendants' third-party experts contradicted one another on the extent of damages, and that the Defendants were failing to give the Plaintiff the benefit of the doubt with regard to points of contentions. Further, this letter explained to Defendants that one of their own experts had recommended that the vast majority of damaged roof slopes be "removed and replaced with new shingles in-lieu of spot repairs", and in light of his erroneous identification of shingles on some buildings, all roof slopes required replacement. The letter went on to point out that based upon the facts set forth in the letter that it appeared Defendants were in violation of N.C. Gen. Stat. § 58-63-15(11) in multiple respects, including but not limited to: (1) failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed; and (2) attempting to settle a claim for less than the amount to which a reasonable man would believe he was entitled.

31. On or about February 16, 2023, Defendant issued a payment for the replacement of the undisputed eleven roofs on the Property. However, Defendant had still never responded to Plaintiff's December 2022 letter. After hearing no response for seventy-seven days, on February 23, 2023, Premier sent yet another letter to Defendants, and said letter is attached hereto as Exhibit I. Therein, Premier demanded a response to its prior correspondence, and it went on to point out that documentation was also being ignored from the Plaintiff's contractor, Well-Krafted Roofing, and that Defendants had been "doing nothing whatsoever." As stated therein, "[t]his delay and attempt to sweep these issues under the rug are concerning to the extreme."

32. Again, Premier received no formal written response from Defendants. Therefore, on March 7, 2023, Premier emailed Defendants' adjuster, Mr. Malley, again asking for a formal written response to its prior correspondence and reiterating that "the only permissible scope of

repair is replacement over patch repairs" on all buildings. Thereafter, on April 3, 2023, Premier again emailed Mr. Malley asking for a formal written response, which he still had not yet been received. Premier sent its final email to Mr. Malley on May 2, 2023 again asking for a formal written response from Defendants. On May 15, 2023, a response was finally received wherein Defendants stated they would pay approximately another $14,000.00, a woefully insufficient amount.

33. To date, Defendants have made Replacement Cost Value payments in the amounts of $155,140.00 and $5,520.24, and an Actual Cost Value payment of $365,745.00. However, Defendant has neither paid nor provided any reasonable explanation for their failure to pay the remaining $1,621,861.05 claimed in Plaintiff's Sworn Proof of Loss.

34. Without proper payment of the Claim, and as a result of Defendants' delay tactics and repeated, and unreasonable denials, Plaintiff incurred, and will continue to incur, significant expenses in mitigating its damages, attorney's fees, litigation costs, and other expenses and damages.

35. At all times, Plaintiff made itself and the Property available to Defendants, their agents, and their representatives and fully cooperated with Defendants, their agents, and their representatives to inspect and investigate the damage caused by hail and wind.

36. Defendants have failed to provide a reasonable basis for their failure to pay the Claim or for their protracted investigation and unreasonable positions taken in the adjustment of the Claim.

37. At all times throughout the investigation of the Claim, Plaintiff complied as promptly as possible with every request made by Defendants for information regarding the Claim

and have otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

38. Plaintiff repeatedly provided all information and documentation relevant to Plaintiff's contention that roof replacements for all buildings are necessary and covered under the Policy. Such information was not provided reasonable consideration by Defendants. As such, Plaintiff continued to expend time, energy, and resources to provide estimates and further information in support of the Claim.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

39. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

40. The Policy is and was a valid and enforceable contract between Plaintiff and Defendants.

41. Defendants breached this contract by failing to provide the benefits, coverages and payments due thereunder to Plaintiff.

42. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered monetary damages in an amount equal to the payments due under the Policy, less any prior coverage payments, as well as consequential, ensuing and other forms of damages as may be proven at trial.

## SECOND CLAIM FOR RELIEF
**Breach of the Covenant of Good Faith and Fair Dealing**

43. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

44. The Defendants' conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

45. Specifically, the Defendants (1) refused to pay the full amount of the loss after recognition of a valid claim, (2) engaged in bad faith through wrongful purpose or intent to save money under its coverages, and (3) engaged in aggravating conduct, through evidencing a reckless and wanton disregard of Plaintiff's rights under the Policy as detailed herein.

46. As a proximate result of the Defendants' bad faith breach of the contract, Plaintiff is entitled to recover punitive damages from the Defendants for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## THIRD CLAIM FOR RELIEF
**Unfair & Deceptive Trade Practices**

47. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

48. The conduct of Defendants constitutes Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes.

49. Conduct that would be found in violation of N.C.G.S. § 58-63-15(11) is a violation of N.C.G.S. § 75-1.1 and is an Unfair & Deceptive Trade Practice. The conduct of all Defendants violates one or more of the subparts of N.C.G.S. § 58-63-15(11), including, but not limited to:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation;

e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

f. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy;

g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of or refusal to pay a claim;

h. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed; and

i. Other particulars as will be adduced through further investigation, discovery, or at trial.

50. Moreover, with Defendants' actual and/or constructive knowledge of Plaintiff's damages, Defendants unfairly and unlawfully failed to promptly investigate, adjust, and pay the Claims in violation of North Carolina law and Chapter 75 of the North Carolina General Statutes. The factually specific conduct in violation of Chapter 75 of the North Carolina General Statutes, in part, is outlined above.

51. The conduct of the Defendants directly violates N.C.G.S. § 75-1.1 in that their acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to

consumers, including Plaintiff, and were an inequitable assertion of their power and position over Plaintiff under the circumstances.

52. Defendants' unfair and deceptive trade acts or practices were in or affecting commerce.

53. As a proximate result of Defendants' unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

54. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

55. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiff prays that the Court enter Judgment as follows:

1. That Plaintiff has and recover of Defendants, jointly and severally, a sum equal to the amount of benefits due under the Policy, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiff be awarded treble its damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendants;

5. That all issues of fact be tried by a jury; and

6. That Plaintiff has such other and further relief as the Court may deem just and proper.

This the 22nd day of May, 2023.

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**

By: /s/ Robert H. Jessup
Robert H. Jessup (State Bar No. 42945)
Post Office Box 12347
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorney for Plaintiff*